UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00505-RSE

JOSEPH W.                                                    PLAINTIFF

VS.

FRANK BISIGNANO,
*Commissioner of Social Security[1]*                         DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

The Commissioner of Social Security denied Claimant Joseph W.'s ("Claimant's") application for disability insurance benefits and supplemental security income benefits. Claimant presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Claimant (DN 13; DN 14) and the Commissioner (DN 16) have filed a Fact and Law Summary. Claimant did not file a reply brief. The Parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 11).

### I. Background

Claimant applied for disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act on December 9, 2021, alleging disability beginning on August 30, 2021. (Transcript, hereinafter, "Tr." 231). He alleged disability based on diabetes, neuropathy, amputation of part of the left foot,

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Frank Bisignano is substituted for Martin O'Malley as Defendant in this case.

osteomyelitis, memory loss, confusion, and glasses due to vision loss. (Tr. 269). The State Agency Disability Determination Service denied Claimant's application at both the initial and reconsideration levels. (Tr. 123, 132).

At Claimant's request, Administrative Law Judge Candace McDaniel ("ALJ McDaniel") conducted a hearing in Louisville, Kentucky, on June 8, 2023. (Tr. 74, 161). Claimant and his counsel appeared by telephone.[2] (Tr. 76). An impartial vocational expert also participated in the hearing. (*Id.*). During the hearing, Claimant testified to the following. He is under fifty years old and has an 11th grade education. (Tr. 79). He lives in a house with his girlfriend and their seventeen-year-old son. (Tr. 79-80). Claimant has a driver's license and drives occasionally, but "not as much as [he] used to before [he] got . . . depression." (Tr. 80). He previously worked in the Radcliff Electric Supply warehouse, where he used a forklift to lift items that he estimated weighed up to sixty pounds. (Tr. 80-81). Later, he delivered and set up furniture that he estimated weighed over one-hundred pounds. (Tr. 82-84). During deliveries, he drove a truck and sometimes receive assistance in unloading items. (*Id.*). He also worked at a recycling center and at Walmart. (Tr. 84). Shortly after he started working at Walmart, he had his toe amputated. (Tr. 85). He has not worked since he underwent the amputation. (*Id.*).

Among other ailments and treatments, Claimant testified that he was tested for carpal tunnel syndrome but has not followed up with a specialist for treatment. (Tr. 86). He also experiences swelling in his hands and estimated the heaviest weight he could lift is five to ten pounds. (Tr. 92-3). Claimant reported wearing clothes that have elastic because he experiences difficulty in buttoning shirts and pants. (Tr. 96). He helps with household chores like sweeping, mopping, and dusting. (Tr. 97).

---

[2] The hearing was conducted telephonically because of the COVID-19 pandemic. (Tr. 76).

ALJ McDaniel issued an unfavorable decision on August 30, 2023. (Tr. 52). In doing so, she applied the Commissioner's five-step evaluation process for determining whether a claimant is disabled, 20 C.F.R. § 404.1520, and found as follows. First, Claimant has not engaged in substantial gainful activity since August 30, 2021, his alleged onset date. (Tr. 58). Second, Claimant has the severe impairments of diabetes with neuropathy, osteomyelitis with partial amputation of the left foot, carpal tunnel syndrome, adjustment disorder, and borderline intellectual functioning. (*Id.*). Third, he retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) with the following exceptions.

> [Claimant] is further limited to: standing and walking 4 hours in an 8-hour workday; handling and fingering bilaterally on a frequent basis; occasional climbing of ramps or stairs; occasional stooping, kneeling, crouching, or crawling; no concentrated exposure to vibration or temperature extremes including heat, cold, humidity, or wetness; no hazards involving unprotected heights, no ambulation on wet or slippery surfaces, and no operation of dangerous moving machinery; can understand, remember, and carry out simple instructions; can interact occasionally with coworkers, supervisors, and the public; and no fast-pace processing or assembly line type jobs.

(Tr. 58-61). Among other information, ALJ McDaniel considered state agency medical consultants' opinions in making her RFC determination. (Tr. 63-65). Finally, ALJ McDaniel found that Claimant is unable to perform any past relevant work but, considering Claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 66-67).

ALJ McDaniel concluded that Claimant was not under a disability, as defined in the Social Security Act, from August 30, 2021 through the date of her decision. (Tr. 68). Claimant appealed ALJ Collins' decision. (Tr. 222-24). On July 8, 2024, the Appeals Council declined Claimant's request for review. (Tr. 2). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court on September 5, 2024. (DN 1).

3

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-4 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F. 2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could support a decision as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

<u>III. Analysis</u>

Claimant challenges ALJ McDaniel's RFC determination, arguing that it is unsupported by substantial evidence. (DN 13). Claimant argues ALJ McDaniel failed to build an accurate and logical bridge between the evidence and the manipulative limitations assessed in the RFC. Additionally, Claimant argues that ALJ McDaniel should have developed the record by obtaining a medical opinion regarding the presence and degree of manipulative limitations warranted to accommodate Claimant's carpal tunnel syndrome. (*Id.*, at PageID # 1877). Claimant concludes that this is not harmless error because the vocational expert testified that limiting Claimant to occasional handling and fingering would preclude the performance of all the occupations cited and relied on by ALJ McDaniel. (*Id.*, at PageID # 1878).

A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). In other words, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). ALJs are required to consider the findings of state agency medical consultants, who are highly qualified experts in agency disability evaluation. 20 C.F.R. § 404.1513a(b)(1).

ALJ McDaniel considered two state agency medical consultants' opinions. (Tr. 63-65). ALJ McDaniel began with the initial state agency medical consultant's opinion, which she observed "assessed light exertion with only some additional postural and environmental limitations." (Tr. 63 (citing Tr. 124-31)). ALJ McDaniel found this opinion partially persuasive because, although it "appears well-cited based on the evidence available at the time and consistent with the undersigned's own review of the record," new evidence on the record "supports the need

for greater limitations." (*Id.*). She also noted that the opinion "supports functioning widely inconsistent with the claimant's allegations . . . well after his alleged onset." (*Id.*).

Next, ALJ McDaniel considered March 2022 "physician notes consultative exam evidence" authored by Nurse Practitioner Teena Kissee. (*Id.*; *see* Tr. 974-78)). ALJ McDaniel observed that this was authored within 12 months of Claimant's alleged onset and reflected "largely normal" exam findings, including "5/5 muscle strength," "full grip," and "intact fine manipulation and dexterous movements." (*Id.*). Ultimately, ALJ McDaniel determined that Kissee's notes "provides some support for the need for the light exertional, postural, and hazard limits above but not greater limitations more consistent with [Claimant's] allegations." (*Id.*).

Additionally, ALJ McDaniel discussed the state agency medical consultant's opinion provided at the reconsideration level, which "noted updated records including September 2022 [Electromyogram and Nerve Conduction Study ("EMG/NCS testing")] showing severe or marked carpal tunnel primarily on the left but did not endorse any manipulative or reaching limitations and affirmed the prior limited light exertional limitations." (Tr. 63 (citing Tr. 133-43)). ALJ McDaniel found this opinion partially persuasive and provided the following explanation.

> [ALJ McDaniel] ultimately added limitations in the claimant's favor based on his testimony of persistent symptoms in the hands and arms, extreme problems standing/walking, and other new evidence but [ALJ McDaniel] still [was] not persuaded that symptoms have worsened for any period of 12 months or more to the degree that [Claimant] is – or could be expected to be – unable to perform at least the limited range of light work allowed for above.

(Tr. 63-64).

Later in the RFC analysis, ALJ McDaniel specifically discussed Claimant's "allegations of upper extremity limits," which she found "not entirely consistent with the record." (Tr. 65). ALJ McDaniel elaborated that "[w]hile the EMG/NCS testing is significant, the most recent state

agency medical consultant findings outlined above are well-cited in this regard and do not support related limitations." (*Id*.). She further noted that there was "no new evidence to support a worsening since then." (*Id*.). Specifically, ALJ McDaniel discussed that Claimant "acknowledged no surgeries or follow-up treatments and no use of a brace more recently." (*Id*.). As a result, ALJ McDaniel found "the upper extremity limits for handling and fingering bilaterally on a frequent basis to be reasonable but [found] the claimant's allegations inconsistent with the record to any greater degree." (*Id*.). The RFC reflected this, which stated that Claimant could perform a range of "light work" that involves handling and fingering only on a "frequent basis" and "no concentrated exposure to vibrations or temperature extremes." (Tr. 61).

### A. Whether ALJ McDaniel Built an Accurate and Logical Bridge Between the Evidence of Record to Carpal Tunnel Syndrome and the RFC's Manipulative Limitations

Claimant argues that ALJ McDaniel failed to build an accurate and logical bridge between the evidence related to carpal tunnel syndrome and the RFC's manipulative limitations. (DN 13, at PageID # 1874-75). Specifically, he asserts ALJ McDaniel rejected the opinions of the state agency medical consultants' opinions due to their lack of manipulative limitations but later found their lack of manipulative limitations both well-cited and supportive of no limitations. (*Id*. at PageID # 1875). The Commissioner disagrees, alleging that Claimant's argument "is without merit and reflects a misunderstanding of an ALJ's RFC determination." (DN 16, at PageID # 1893 (citing SSR 96-8p, 1996 WL 374184, at *3)).

ALJs are required to "provide an accurate and logical bridge between the evidence and the conclusion." *Logsdon v. Kijakazi*, 1:20-cv-177-GNS, 2022 WL 812416, at *5 (W.D. Ky. Mar. 16, 2022) (citations omitted). Stated otherwise, "the ALJ need not discuss every aspect of the record or explain every finding at length but must 'articulate with specificity reasons for the findings and conclusions that he or she makes[.]'" *Rhodes v. Berryhill*, 3:17-cv-167-RGJ-CHL, 2019 WL

5712571, at *3 (W.D. Ky. Nov. 5, 2019) (quoting *Bailey v. Comm'r of Soc. Sec.*, 98-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999)); *see also Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 519 (6th Cir. 2011) (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)) ("[T]he ALJ's decision still must say enough 'to allow the appellate court to trace the path of his reasoning.'").

ALJ McDaniel considered the prior administrative medical findings by the state agency medical consultants, who found that Claimant had no manipulative limitations. (Tr. 63-64). When discussing claimant's subjective allegations regarding his upper extremity limits, ALJ McDaniel recognized that the state agency medical consultant findings are "well-cited" and "do not support related limitations." (Tr. 63, 65). Even so, ALJ McDaniel was not fully persuaded by the state agency medical consultants' findings, explaining that she found additional manipulative limitations based on Claimant's testimony. (Tr. 61, 63-64).

ALJ McDaniel noted Claimant reported that he was unable to use his hands, grip objects, or lift more than 5 to 10 pounds, but admitted that he was not using a brace and had not followed up since his doctor suggested carpal tunnel surgery. (Tr. 63, 65). The Sixth Circuit previously held that a claimant's failure to seek examination or treatment of an alleged disabling pain "may cast doubt on a claimant's assertions of disabling pain." *Strong v. Comm'r of Soc. Sec.*, 88 F. App'x 841, 846 (6th Cir. 2004) (citations omitted); *see Branon v. Comm'r of Soc. Sec.*, 539 F. App'x 675, 678 (6th Cir. 2013) (A "conservative treatment approach suggests the absence of a disabling condition"); 20 C.F.R. § 404.1529(c)(3).

ALJ McDaniel created a logical bridge between the evidence of record establishing Claimant's carpal tunnel impairments, specifically her discussion of Claimant's failure to follow up on carpal tunnel surgery, and her conclusion that upper extremity limits for handling and fingering bilaterally on a frequent basis, but to no greater degree, were reasonable manipulative

limitations to account for Claimant's impairments. This conclusion was also supported by the state agency medical consultants' opinions, who opined that Claimant had less limitations than what ALJ McDaniel found. Based on this analysis, the Court finds ALJ McDaniel articulated with specificity the reasoning behind the manipulative limitations in her RFC, and her conclusion is supported by substantial evidence on the record.

### B. Whether ALJ McDaniel Failed to Develop the Record

Claimant argues that ALJ McDaniel rejected the only medical opinions regarding manipulative limitations and then improperly based her opinion on her own lay interpretation of raw medical data. (DN 13, at PageID # 1876). Claimant asserts that the evidence related to carpal tunnel syndrome was a "highly technical EMG/NCS" which ALJ McDaniel was not qualified to interpret on her own. (*Id*.). Asserting that ALJ McDaniel interpreted raw medical data without a directly corresponding medical opinion, Claimant contends that ALJ McDaniel violated her duty to develop the record. (*Id*., at PageID # 1877 (citing *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp. 2d 908, 912 (N.D. Ohio 2008))).

In response, the Commissioner argues that ALJ McDaniel did not have to base her functional limitations finding on a supporting medical opinion because, if she was required to do so, it would "improperly confer upon the medical source the authority to make the disability decision." (DN 16, at PageID # 1889 (citing *Luukkon v. Comm'r of Soc. Sec.*, 653 F.App'x 393, 401 (6th Cir. 2016))). Further, the Commissioner asserts that "although some medical evidence must support the RFC, that evidence need not take the form of a medical *opinion*." (*Id*., at PageID # 1890 (citing *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020)). The Commissioner argues that ALJ McDaniel's evaluation of Claimant's manipulative limitations "was supported by opinion evidence from a consultative examining nurse practitioner and two

state agency medical consultants." (*Id.* (citing Tr. 63-64, 128-29, 138-40, 974-78)). Therefore, the Commissioner argues that ALJ McDaniel's evaluation is supported by substantial evidence and should be affirmed. (*Id.*, at PageID # 1892).

1. Whether ALJ McDaniel Should Have Obtained a Directly Corresponding Medical Opinion

As discussed *supra*, the RFC is the most a claimant can do despite his physical and mental limitations. An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. 20 C.F.R. § 404.1545(a)(3). The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. 20 C.F.R. § 404.1520c. The RFC determination, like the overall disability determination, is a conclusion reserved for the Commissioner. *See Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner.").

An ALJ is not required to base an RFC on a medical opinion. *See Luukkonen v. Comm'r of Soc. Sec.*, 653 F.App'x 393, 401 (6th Cir. 2016) ("[D]etermining how certain diagnoses and symptoms bear on a claimant's capacity to work is not exclusively a 'medical judgment' but a matter explicitly within the ALJ's purview."); *Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (holding ALJ properly determined the effect of claimant's conditions on her ability to work despite no medical opinion reaching the same conclusion); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Further, "the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. § 416.917(a)). While the ALJ has a duty to conduct a "full inquiry," that duty "does not require a consultative

examination at government expense unless the record establishes that such an examination is *necessary* to enable to administrative law judge to make the disability decision." *Id*. (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)).

Claimant points to the so-called "*Deskin* rule" in support of his argument that ALJ McDaniel should have obtained a medical opinion to support his RFC determination. (DN 16, at PageID # 5152 (quoting *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp. 2d 908, 911 (N.D. Ohio 2008))). In the years following *Deskin*, district courts within the Sixth Circuit have narrowed this rule to apply only (1) where an ALJ made an RFC determination based on no medical source opinion; or (2) where an ALJ made an RFC error based on an outdated source opinion that did not include consideration of a critical body of objective evidence. *Hancock v. Comm'r of Soc. Sec.*, 2022 WL 801278, at *4 (W.D. Ky. Mar. 15, 2022) (citing *Branscum v. Berryhill*, 2019 WL 475013, at *11 (E.D. Ky. Feb. 6, 2019)). Notably, however, *Deskin* is not controlling and has received mixed reviews in its own district. *See, e.g., Henderson v. Comm'r of Soc. Sec.*, 1:08 CV 2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) ("The Court finds, however, that *Deskin* . . . is not representative of the law established by the legislature, and interpreted by the Sixth Circuit Court of Appeals."); *Berrier v. Comm'r of Soc. Sec.*, 3:20-CV-10655-JZ, 2021 WL 6881246, at *6 (N.D. Ohio Sep. 10, 2021), *report and recommendation adopted*, 3:20-CV-1655, 2022 WL 189855 (N.D. Ohio Jan. 21, 2022).

Here, neither of the *Deskin* circumstances apply. ALJ McDaniel relied on the whole record, including the medical opinion of Nurse Practitioner Teena Kissee, the medical findings of two state agency medical consultants, and an EMG/NCS report from Claimant's neurologist. (Tr. 62-64). Further, ALJ McDaniel's RFC determination considered additional records supplied by Claimant after the conclusion of the hearing. (Tr. 55). ALJ McDaniel proceeded to add greater

restrictions to the manipulative limitations than what was recommended by the state agency medical consultants, who took the EMG/NCS testing into account. (Tr. 63). ALJ McDaniel limited Claimant to light work except that he is further limited to, among other things, "handling and fingering bilaterally on a frequent basis[.]" (Tr. 61).

There is no evidence that ALJ McDaniel interpreted "raw medical data." While ALJ McDaniel considered medical data, she did not consider it in a vacuum. In addition to the medical opinions, ALJ McDaniel considered Claimant's relevant medical history, Claimant's testimony, and vocational expert testimony. (Tr. 61-66). Further, ALJ McDaniel considered and weighed the relevant medical opinion evidence for its persuasiveness as required by the regulations. 20 C.F.R. § 416.920c. Although ALJ Collins found the state agency medical opinions related to manipulative limitations only partially persuasive, portions of the opinions support ALJ McDaniel's RFC determination in a way that makes *Deskins* inapplicable. For example, ALJ McDaniel agreed with the state agency medical consultants that Claimant's functioning was "widely inconsistent with the claimant's allegations." (Tr. 63). Same goes for ALJ McDaniel's evaluation of Kissee's medical opinion, which reflected "largely normal" exam findings, including "5/5 muscle strength," "full grip," and "intact fine manipulation and dexterous movements." (*Id.*, *see* Tr. 974-78). Additionally, ALJ McDaniel noted that there was "no new evidence to support a worsening since [the most recent state agency medical consultant findings were made]" and that Kissee's opinion was authored within 12 months of Claimant's alleged onset date. (Tr. 63, 65). Claimant does not challenge the substance or evaluation of these assessments.

The Court finds that ALJ McDaniel provided a sufficient discussion of both the medical evidence of record and the opinion evidence in the record to support her RFC determination. In so finding, ALJ McDaniel did not erroneously make her own independent medical findings.

## 2. Whether ALJ McDaniel Had a Heightened Duty to Develop the Record

While an ALJ must ensure that every claimant receives a "full and fair hearing," the ultimate burden of proving entitlement to benefits lies with the claimant. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022); *see Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *see also* 20 C.F.R. § 416.912(a). Although social security proceedings are inquisitorial rather than adversarial, that does not mean that the ALJ advocates for the claimant. *Id.* ("Promoting the claimant's case, of course, is not the ALJ's obligation. The ALJ, remember, is a neutral factfinder, not an advocate.").

An ALJ "has discretion to determine whether additional evidence is necessary." *Ferguson v. Comm'r of Soc. Sec.*, 628 F. 3d 269, 275 (6th Cir. 2010) (citing *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001)). Where the record is insufficient to support a disability determination, an ALJ may recontact medical sources, request additional existing medical records, ask the claimant to undergo a consultative examination, or ask the claimant or others for more information. 20 C.F.R. § 416.920b(c)(i)-(iv). It is only under "extreme circumstances," such as when the claimant appears without counsel, that the ALJ could be said to have a "special duty" to help develop the record. *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563-64 (6th Cir. 2022) (discussing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).

Claimant argues that ALJ McDaniel erred by not developing the record when she allegedly interpreted raw medical data without a directly corresponding medical opinion. (DN 13, at PageID # 1876-77). But Claimant does not show that his case was an "extreme" situation in which ALJ McDaniel had a heightened duty to develop the record. Claimant was represented at all stages of the application and appeals process. (*See* Tr. 76). ALJ McDaniel gave three weeks for Claimant to file additional information after the hearing. (Tr. 109). The additional evidence was admitted to

the record and considered by ALJ McDaniel. (Tr. 55). The record included Claimant's relevant medical history, Claimant's testimony, vocational expert testimony, an EMG/NCS report from Claimant's neurologist, and findings of State agency doctors, all of which ALJ McDaniel considered in her decision. Thus, Claimant's argument fails.

C. Whether ALJ's Alleged Error was Harmless

Claimant argues that the ALJ's alleged error in limiting Claimant to frequent handling and fingering instead of occasional handling and fingering is not harmless error. (DN 13, at PageID # 1878). He elaborates that "the degree of limitation is clearly outcome determinative" based on the vocational expert's testimony that "limiting [Claimant] to only occasional handling and fingering would preclude the performance of all the occupations cited and relief upon by the ALJ at step five." (*Id*. (citing Tr. 105)). The Court disagrees.

ALJ McDaniel's opinion benefitted Claimant by finding additional limitations than those found by the state agency medical consultants. *See Leslie B. v. O'Malley*, 1:22-cv-175-HBB, 2024 WL 130165, at *5 (W.D. Ky. Jan. 11, 2024) (holding that when an ALJ's additional limitations ultimately benefit a claimant, it cannot constitute error). Therefore, even if ALJ McDaniel erred in analyzing the state agency medical consultants' findings, the error – which benefitted Claimant – would be harmless at best. Claimant is in no position to assert, as error, something that benefitted him.

For all these reasons, the Court finds that ALJ McDaniel did not have a heightened duty to develop the record and was not required to seek additional medical evidence for Claimant.

## IV. ORDER

ALJ McDaniel's decision is supported by substantial evidence in the record and comports with the applicable regulations; accordingly, the Court **ORDERS** the Commissioner's decision be **AFFIRMED**. This is a final and appealable Order and there is no just cause for delay.

Copies:        Counsel of Record

15